1
2
3
4
5
6
7                        IN THE UNITED STATES DISTRICT COURT

8                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                                 SAN JOSE DIVISION

10   Acacia Media Technologies Corp.,              NO. C 05-01114

11                    Plaintiff,                   **THIRD CLAIM CONSTRUCTION ORDER**

12          vs.

13   New Destiny Internet Group, et al.,

14                    Defendants.

15   _____

16   And All Related and/or Consolidated
     Actions.

17   _____/

18

19                              **I.  BACKGROUND**

20          This is the Third Claim Construction Order in this Multi-District Litigation case in which

21   Plaintiff, Acacia Media Technologies Corporation, asserts infringement involving the Yurt's family

22   of patents entitled, "Audio and Video Transmission and Receiving System ('992, '275, '863, '720,

23   and '702).

24          On July 12, 2004, the Court issued its First Claim Construction Order.  (hereafter, the "July

25   12 Order," filed in SA CV 02-1040-JW (MLGx).)

26          On December 7, 2005, the Court issued its Second Claim Construction Order.  (hereafter, the

27   "December 7 Order," Docket Item No. 119.)

28

United States District Court
For the Northern District of California

1    The Court held further claim construction hearings on June 14 and 15, and September 7 and

2    8, 2006.  This Order gives the Court's construction of disputed terms in the '992 and '275 Patents

3    which were the subject of the June and September hearings.  The Patents which are not addressed in

4    this Order will be subject of a subsequent Order.

5                                    **II.  WITHDRAWN CLAIMS**

6        During the June and September hearings, the parties advised the Court that Acacia is

7    withdrawing from assertion the following Claims of the '992 Patent: 1-18, 23-40, and 47-58.  The

8    parties represented that a formal stipulation of withdrawal will be filed with the Court.  In view of

9    the tendered withdrawal of those Claims, the Court will not give further consideration to construing

10   them, unless the Court finds it necessary to do so to construe a Claim which remains in contention.

11                                    **III.  STANDARDS**

12       Claim construction is purely a matter of law, to be decided exclusively by the Court.

13   Markman v. Westview Instruments, Inc., 517 U.S. 370, 387 (1996).  Claims are construed from the

14   perspective of a person of ordinary skill in the art at the time of the invention.  Markman v.

15   Westview Instruments, Inc., 52 F.3d 967, 986 (Fed. Cir. 1995).  To determine the meaning of the

16   claim terms, the Court initially must look to intrinsic evidence, that is, the claims, the specification,

17   and, if in evidence, the prosecution history.  Autogiro v. United States, 384 F.2d 391 (Ct. Cl. 1967).

18   The Court must look first to the words of the claims themselves.  See Vitronics Corp. v.

19   Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  These words are to be given their ordinary

20   and customary meaning unless it is clear from the specification and prosecution history that the

21   inventor used the term with a different meaning.  Id.  The claims should be interpreted consistently

22   with the specification.  See Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1250

23   (Fed. Cir. 1998).

24       Where intrinsic evidence alone resolves any ambiguity in a disputed claim term, it is

25   improper to rely on evidence which is external to the patent and file history.  Vitronics, 90 F.3d at

26   1583, 1585.  However, extrinsic evidence may be considered in the rare instances where the intrinsic

27   evidence is insufficient to enable the court to construe disputed claim terms.  Id. at 1585.  Common

28

*United States District Court*
For the Northern District of California

1   sources of extrinsic evidence include expert testimony, inventor testimony, dictionaries, and

2   technical treatises and articles.  Id. at 1584.

3          The Federal Circuit has consistently employed the caveat, "if possible," to their instruction

4   that claims should be construed to sustain their validity.  Rhine v. Casio, Inc., 183 F.3d 1342, 1345,

5   (Fed. Cir. 1999) (citing Whittaker Corp. v. UNR Indus., Inc., 911 F.2d 709, 712 (Fed. Cir. 1990)).

6   At the same time, the Federal Circuit has admonished against judicial rewriting of claims to preserve

7   validity.  Rhine, 183 F.3d at 1354 (citing Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792,

8   799 & n. 6 (Fed. Cir. 1990)).

9                                              **IV.  DISCUSSION**

10  **I.       THE '992 PATENT**

11  **A.       The '992 Patent - Claim 19**

12         Claim 19 of the '992 Patent provides:[1]

13         A distribution method responsive to requests from a **user** identifying **items** in a transmission
       system **containing information** to be sent from the **transmission system** to **receiving**
14     **systems** at **remote locations**, the method comprising the steps of:

15             storing, in the transmission system, **information from items** in a
               compressed data form, the information including an identification
16             code and **being placed into ordered data blocks**;

17             sending a request, by the user to the transmission system, for **at least a**
               **part of the stored information** to be transmitted to one of the
18             receiving systems at one of the **remote location selected by the user**;

19             sending **at least a portion of the stored information** from the
               transmission system to the receiving system at the **selected remote**
20             **location**;

21             receiving the sent information by the receiving system at the **selected**
               **remote location**;

22
               storing a complete copy of the received information in the receiving
23             system at the **selected remote location**; and

24             **playing back the stored copy of the information using the**
               **receiving system** at the **selected remote location** at a **time requested**
25             **by the user**.

26  _____

27         [1] Unless otherwise indicated, all bold typeface is added by the Court to emphasize the terms
    and phrases under consideration.

28                                                  3

**United States District Court**
For the Northern District of California

**1.      The Preamble of Claim 19**

Before construing the words and phrases of the elements of Claim 19, the Court considers whether the Preamble is limiting.

The Preamble of Claim 19 provides:

A distribution method responsive to requests from **a user** identifying items **in a transmission system** containing information to be sent from **the transmission system** to **receiving systems** at remote locations, the method comprising the steps of...

Generally, the preamble does not limit the claims. Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, (Fed. Cir. 2002) (citing DeGeorge v. Bernier, 768 F.2d 1318, 1322 n. 3 (Fed. Cir. 1985)). However, if a preamble is used as an antecedent, namely, to define the apparatus which performs the claimed invention, it is limiting. Allen Eng'g Corp., 299 F.3d at 1346 (citing Bell Comm. Research, Inc. v. Vitalink Comm. Corp., 55 F.3d 615, 620 (Fed. Cir. 1995)). In addition, "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention." Catalina Marketing International Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808 (Fed. Cir. 2002) (citing Bristol-Meyers Squibb Co. v. Ben Venue Labs., Inc., 246 F.3d 1368 (Fed. Cir. 2001)).

The Court finds that the Preamble of Claim 19 is limiting for two reasons. First, the Preamble of Claim 19 is antecedent to the claims in that it requires the distribution method be performed by a "transmission system" and a "receiving system," in response to requests from a "user." Multiple claim elements refer to "the transmission system," "the receiving system," and "the user" based upon the Preamble. Second, the prosecution history of the '992 Patent shows that the Preamble of the claim which was eventually numbered Claim 19 was amended by the applicants to avoid prior art: (the additions are underscored)

A distribution method responsive to requests <u>from a user</u> identifying items in <u>a transmission system</u> containing information to be sent from the transmission system to <u>receiving systems at</u> remote locations, the method comprising the steps of: . . .

//

4

(Round 3 Defendants' Claim Construction Brief - Part I at 8, Docket Item No. 159; Declaration of David Benyacar, hereafter, "Benyacar Decl.," Ex. F at 2, Docket Item No. 161.)   The applicants confirmed in their accompanying remarks that the amendments were made to ". . . reflect that the distribution method recited in these claims involves both a transmission system and receiving system at a remote location, and that the received information is stored as a complete copy in the receiving system at the remote location."  (Benyacar Decl., Ex. F at 12.)  This amendment was made at the examiner's direction to overcome the previous rejections.  (Id.)

The Court finds that the **Preamble of Claim 19 of the '992 Patent** is limiting as follows:

> **Based upon the Preamble of Claim 19 of the '992 Patent, the distribution method disclosed in Claim 19 of the '992 Patent must be performed by a "transmission system" having items containing information, which information is to be sent to "receiving systems" at remote locations in response to requests from a "user" identifying items.**

**2.     The Order of the Steps of Claim 19**

It is undisputed that the steps of the elements of Claim 19 must be performed in the order that they appear in the claim.  However, there is a dispute over whether each step must be completed before a subsequent step may commence.  Each step of Claim 19 is antecedent to each succeeding step.  It is inherent in the meaning of "antecedent" that a step of a method, which is antecedent to another step, must commence before the succeeding step commences, and it must finish before the succeeding step can finish.  Therefore, the Court finds that each step need not be completed before a subsequent step may commence.

**3.     "transmission system"**

The Court addresses the definition of the phrase "transmission system" because it is a limitation on the method disclosed in Claim 19.

The parties dispute the proper construction of the phrase, "transmission system" as previously defined by the Court and as used in Claim 19.  In the July 12 Order, the Court construed the phrase "transmission system," as it is used in apparatus Claims 1, 17 and 27 of the '702 Patent and in Claims 1-18 of the '992 Patent.  Based on the arguments in the briefs and presentations made during the June and September hearings, the Court reconsiders its definition of "transmission system."

When the meaning of a term is sufficiently clear in the patent specification, that meaning shall apply.  Multiform Desiccants, Inc.  v.  Medzam, LTD., 133 F.3d 1473, 1477 (Fed. Cir. 1998) (citing Intellical, Inc. v. Phonometrics, Inc., 952 F.2d 1384, 1388 (Fed. Cir. 1992)).  "This rule of construction recognizes that the inventor may have imparted a special meaning to a term in order to convey a character or property or nuance relevant to the particular invention.  Such special meaning, however, must be sufficiently clear in the specification that any departure from common usage would be so understood by a person of experience in the field of the invention."  Multiform Desiccants, Inc., 133 F.3d at 1477.

In the July 12 Order, the Court treated "transmission system" as a term with a special meaning, namely, "an assembly of elements, hardware and software, that function together to convert items of information for storage in a computer compatible form and subsequent transmission to a reception system."  (July 12 Order at 27-28.)  The Court's July 12 definition recognizes that by "transmission system" the patentee meant something more than an apparatus which "transmits."  The Court finds that the definition given in the July 12 Order recognizes some but not all of the components of what the patentee meant by the phrase "transmission system."

The phrases "transmission system" and "reception system" are coined terms.  The inventions disclosed in the '992 Patent are audio and video transmission and receiving apparatuses and methods which operate over conventional communication channels, but ones in which a user remotely controls what material is transmitted and when it is played  back.  To accomplish this objective, the patentee disclosed an apparatus with interconnected components for preparing the audio and video information for user access and transmission, which the patentee coined as a "transmission system."

When the patentee acts as his or her own lexicographer, the court looks to the intrinsic evidence for a definition of the words and phrases used in a claim.  Vitronics Corp., 90 F.3d at 1582. In the specification of the '992 Patent, the patentee defines the components of the "transmission system" as follow:

> To achieve the objects in accordance with the purposes of the present invention, as embodies and described herein, the **transmission** . . . **system** for providing information to remote locations comprises **source material library means** prior to identification and compression; **identification encoding means** for retrieving the information for the items from the source material library means and for assigning a

United States District Court

For the Northern District of California

unique identification code to the retrieved information; **conversion means**, coupled to identification encoding means, for placing the retrieved information into a predetermined format as formatted data; **ordering means**, coupled to the conversion means, for placing the formatted data into a sequence of addressable data blocks; **compression means**, coupled to the ordering means, for compressing the formatted and sequenced data; **compressed data storing means**, coupled to the compression means, for storing as a file the compressed sequenced data received from the compression means with the unique identification code assigned by the identification encoding means; and **transmitter means**, coupled to the compressed data storing means, for sending at least portion of a specific file to a specific one of the remote locations.

('992 Patent, Col. 2:25-48.)

In specifying the components of "transmission system" the patentee uses a "structural tag plus means." Under this format, once a given means-plus-function component is introduced, the patentee may make subsequent references to the same structure by using the structural "tag" followed by the word "means," e.g., "After compression processing by compressor 116, the compressed audio and/or video data is preferably formatted and placed into a single file by the **compressed data storage means 117**." ('992 Patent, Col. 10:24-26). An apparatus claim which is in mean-plus-function format is limited to the corresponding structure in the specification and its equivalents. A method claim containing a preamble which requires that the steps be performed by an apparatus, is limited to that apparatus and any other apparatus identified in the specification for performing the specified step. Claim 19 is limited to the "transmission system" and "receiving system" disclosed in the specification.

In the July 12 Order, the Court defined some of the structures of the components of the "transmission system." Incorporation of those structures does not import preferred embodiments into a claim. The "transmission system" and "receiving system" and methods for using them to distribute audio and video information as described in the specification are the inventions in the '992 Patent. They are not preferred embodiments; they are the inventions themselves. When the embodiment is described as the invention itself, the claims are not entitled to a broader scope than the embodiment. Modine Manufacturing Co., v. United States International Trade Comm., 75 F.3d 1545, 1551 (Fed. Cir. 1996) (abrogated on other grounds by Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 234 F.3d 558 (Fed. Cir. 2000), rev'd by 535 U.S. 722 (2002)).

1    The specification includes drawings of the "transmission system" described as follows:

2    FIGS. 1a - 1g are high level block diagrams showing different configurations of the
     **transmission . . . system** of the present invention.

3    ('992 Patent, Col. 3:50-53.)

4        * * *

5    FIGS.  2a and 2b illustrate detailed block diagrams of preferred implementations of
6    the **transmission system** 100 of the present invention.

7    ('992 Patent, Col. 5:59-61.)  It is clear from the specification that the patentee intended "transmission

8    system" to mean a particular assembly of elements depicted in the drawings and described in the

9    specification.  These elements are configured in such a fashion to fulfill the purposes of storing,

10   retrieving and identification encoding, formatting, ordering, compressing, storing in a compressed

11   data library, and transmitting information.

12       Further, in describing the components of the transmission system, the specification states

13   which components are "coupled to" one another.  The Court has previously defined "coupled to" to

14   mean "directly connect to or attached to."  (July 12 Order at 24.)  The specification that a particular

15   component be coupled to another is significant because it means that in order for information to

16   proceed from one component to another, it must follow the same sequence.  It also means that each

17   interconnected component is essential because information can only be transferred to an

18   interconnected component.

19       As used in Claim 19 of the '992 Patent, the Court construes the phrase **"transmission**

20   **system"** to mean:

21       **An apparatus which comprises the following interconnected components:  a source**
     **material library means, an identification encoding means, a conversion means, an**
22   **ordering means, a compression means, a compressed data storing means (as illustrated**
     **in the block diagram labeled Figure 2a), and a compressed data storage means and a**
23   **transmitter means (as illustrated in the block diagram labeled Figure 2b).  The**
     **corresponding structure for each means is the structure identified in the specification**
24   **for performing the recited function.**

25   **4.    "receiving system"**

26       The parties dispute the proper construction of the phrase "receiving system" as that phrase is

27   used in Claim 19 of the '992 Patent.  One aspect of the dispute is the patentee's use in the

28   specification of the phrases "receiving system" and "reception system."  The dispute is whether the

United States District Court

For the Northern District of California

8

United States District Court

For the Northern District of California

1   two phrases are used interchangeably in the patent specification and should, therefore, be given the

2   same definition.

3        The specification uses the phrases "receiving system" and "reception system"

4   interchangeably.[2]  For example, Figures 1a - 1g are block diagrams which contain graphic figures

5   labeled "**200**," entitled "RECEPTION SYSTEM."  With respect to Figures 1a - 1g, the written

6   description describes them as illustrations of an embodiment of  "receiving systems:"

7        With respect to the transmission and **receiving systems** set forth in Figures 1a-1g. . .

8        * * *

9        In any of the transmission and **receiving systems** illustrated in FIGS. 1a - 1g, the requested
         material may be copy protected.

10    ('992 Patent, Col. 4:64-65; Col. 5:34-35.)

11        With specific reference to Figure 1d, the specification uses the phrases "receiving systems"

12   and "reception systems" interchangeably:

13        FIG. 1d shows a high level block diagram of the transmission and **receiving system** of the
14        present invention including a transmission system 100 distributing to a plurality of users via
         a **reception system 200** configured as a cable television system.

15   ('992 Patent, Col. 4:14-18.)

16        At one point in the specification, graphic block 200 is called a "receiving system."  At

17   another place it is called a "reception system:"

18        ... for communication with the **receiving system 200** . . .

19        * * *

20   _____

21        [2] The Court's attention is drawn to Claim 2 of the '275 Patent which also shares the same
     specification as the '992 Patent.  Claim 2 of the '275 Patent does not use the terms interchangeably.
22   Instead, Claim 2 refers to "receiving system" and "reception system" as being two separate but
     "associated" systems:
23        A distribution method responsive to requests from a user identifying items in a
          transmission system containing information to be sent from the transmission system
24        to **receiving systems** at remote locations, the method comprising the steps of:

25        * * *

              sending a request, by the user to the transmission system, for at least a part of
26        the stored information to be transmitted to a **reception system associated with a**
          **receiving system** at one of the remote locations selected by the user; . . .
27        Except for their use in Claim 2 of the '275 Patent, throughout the specification the patentee
     used the two phrases interchangeably.  The Court will defer consideration of the effect of its
28   construction on Claim 2 of the '275 Patent until that Claim is formally brought into consideration.

United States District Court

For the Northern District of California

> The received information is preferably buffered (step 418) by a storage means analogous to element 203 shown in FIG. 3. The information is preferably buffered so that it may be stored by the user for possible future viewings.  The requested information is then payed back to the **reception system 200** of the user at the time requested by the user (step 419).

('992 Patent, Col. 6:31-32; Col. 19:30-36.)  In light of the specification, the Court finds that the phrases "receiving system" and "reception system" should be given  common definitions.

A second aspect of the dispute with respect to the phrase "receiving system" is the definition of the phrase itself.  In the July 12 Order, the Court construed the phrase "reception system," used in Claim 1 of the '702 Patent, to mean "an assembly of elements, hardware and software, capable of functioning together to receive items of information."  (July 12 Order at 28-29.)  The '702 Patent shares the same specification as the '992 Patent.  Upon reconsideration following the June and September hearings, the Court finds that the patentee intended "receiving system" to have a specialized meaning:

> Additionally, the present invention comprises a **receiving system** responsive to a user input identifying a choice of an item stored in a source material library to be played back to the subscriber at a location remote from the source material library, the item containing information to be sent from a transmitter to the receiving system, and wherein the receiving system comprises **transceiver means** for automatically receiving the requested information from the transmitter as compressed formatted data blocks; **receiver format conversion means**, coupled to the transceiver means, for converting the compressed formatted data blocks into a format suitable for storage and processing resulting in playback in real time; **storage means**, coupled to the receiver format conversion means, for holding the compressed formatted data; **decompressing means**, coupled to the receiver format conversion means, for decompressing the compressed formatted information; and **output data conversion means**, coupled to the decompressing means, for playing back the decompressed information in real time at a time specified by the user.

('992 Patent, Col. 2:61 - Col 3:14.)

Figure 6 is a block diagram illustrating an embodiment of a reception system which has the necessary components to perform the method disclosed in Claim 19.  The specification also contains the phrase "receiving device."  The specification provides that a "receiving device" is not part of a "receiving system:"

> The outputs from converters 211-214 are produced in real time.  The real time output signals are output to a playback system such as a TV or audio amplifier.  They may also be sent to an audio/video recorder of the user.  By using the reception system 200 of the present invention, the user may utilize the stop, pause, and multiple viewing functions of the **receiving device**.  Moreover, in a preferred embodiment of the present invention, the output

10

United States District Court

For the Northern District of California

1   format converters may be connected to a recorder which enables the user to record the requested item for future multiple playbacks.

2
3   ('992 Patent, Col. 18:34-45.)  The Court finds that the "receiving device" in the above excerpt is not a "receiving system."

4
5   Some of the Defendants contend that the Court should construe the phrases "receiving system" to mean "a system which receives information, **either electronically or optically**, **directly** from a transmission system."  Given the electronic nature of the invention, one skilled in audio and video transmission art could arguably read the Yurt's family of patents as limited to electronic transmission.  However, the specification does not limit the system to electronic or optical transmission.  The specification provides that transmission uses "any available communication channel."  ('992 Patent, Col. 15:65-67.)  Accordingly, the Court declines to add the requested "electronic or optical" limitation, preferring to leave it as a matter which does not require construction giving the nature of the invention.

13
14   The Court finds, however, that the use of the word "directly" in its construction would clarify that the invention is one which discloses transmission directly to receiving systems with no intermediary.

16
17   The Court construes the phrase **"receiving systems"** as follows:

18   **In a distribution method as disclosed in Claim 19 of the '992 Patent, in which a transmission system sends information to receiving systems at remote locations in response to a user's request, the phrase "receiving systems" means "an apparatus which directly receives information from the transmission system. The apparatus comprises the following interconnected components:  transceiver means, receiver format conversion means, storage means, decompressing means and output data conversion means, as illustrated in Figure 6.  The corresponding structure for each means is the structure identified in the specification for performing the recited function.  A "reception system" is the same apparatus as a "receiving system."  A "receiving device" is not part of a receiving system.**

23   **5.  "remote locations"**

24   The Court has been asked to reconsider its construction of the phrase "remote locations."  It is a phrase which appears in multiple Claims of the '992 Patent.  In the July 12 Order, the Court found as follows:

27   The parties request construction of the term "remote locations" that appears in claims 1, 19, 22, 25, 41, 47 and 54 of the '992 Patent.

28

11

* * *

Therefore, the Court finds "remote locations" to have its ordinary meaning "positions or sites distant in space from some identified place or places." In claims 1 and 41 of the '992 Patent, the term "remote locations" means "positions or sites distant in space from the transmission system."

In light of the Court's determination that the Preamble of Claim 19 is limiting, the Court reexamines its construction of the phrase "remote locations," which is one of the limiting terms.

The Court construes **"remote locations"** as follows:

**In a distribution method as disclosed in Claim 19 of the '992 Patent, in which a transmission system sends information to receiving systems at remote locations in response to a user's request, the phrase "remote locations" means "positions or sites distant in space from the transmission system."**[3]

**6.     "user"**

Claim 19 claims a method for a transmission system and a receiving system to distribute information in response to requests from a "user." The parties dispute the construction of the word "user."

The specification contains numerous references to the "user" and to a related word "subscriber:"

The Abstract of the '992 Patent provides:

A system of distributing video and/or audio information employs digital signal processing to achieve high rates of data compression. The compressed and encoded audio and/or video information is sent over standard telephone, cable or satellite broadcast channels to a receiver specified by a **subscriber** of the service, ...

The Summary of the Invention provides:

Additionally, the present invention comprises a receiving system responsive to **a user** input identifying a choice of an item stored in a source material library to be played back to **the subscriber** ...

('992 Patent, Col. 2:62-65.)

The Description of Preferred Embodiments provides:

The **user** then enters a customer ID code by which the system accesses the **user's** account, and indicates to the system that the **user is a subscriber** of the system (step 3030). In

---

[3] This construction also applies to the phrase as it appears in Claim 41 of the '992 Patent and Claims 2 and 5 of the '275 patent.

12

United States District Court

For the Northern District of California

response to the **user** entering his ID code in step 3030 the system confirms whether the **user** is in good standing (step 3040).  If the **user** is in good standing, the system queues the **user** to input his request (step 3050).

The **user** request may preferably be made from a catalog sent to each of the **subscribers** of the system.  The **user** will preferably identify his choice and enter the corresponding identification code of the item (step 3060).  The system then preferably confirms the selection that the **user** has made and informs the **user** of the price of the selection (step 3070).

('992 Patent, Col. 14:14-28.)  From the specification, one of skill in the art would understand that the method described in Claim 19, is one in which, a person, called a "user" requests information from the system.  Some embodiments disclose a process by which only authorized users, i.e., "subscribers" are able to receive the information.

The specification of the '992 Patent also uses the word "operator" in describing the transmission and reception systems and methods.  However, the word "operator" is used in the specification to signify someone who acts as part of the transmission system and is not used by the patentee to describe a "user."  Two types of operators are described in the invention, both of which can act as part of the "transmission system."

The first operator function is the "system operator's function" and is described as:

The unique address code is an address assigned to the item by the system operator during storage encoding,

* * *

The storage encoding process may be run by the system operator.

('992 Patent, Col. 10:58-59; Col. 11:13-14.)

The second operator function is that of a "telephone operator," for the purpose of taking requests from a user and manually entering such requests into the transmission system:

Access by the users via **operator** assisted service includes **telephone operators** who answer calls from the users.  The **operators** can sign up new customers, take orders, and help with any billing problems.  The operators will preferably have computer terminals which give them access to account information and available program information.  Operators can also assist a user who does not know a title by looking up information stored in files which may contain the program notes, as described above.  Once the chosen program is identified, the operator informs the user of the price.  After the user confirms the order, the user indicates the desired delivery time and destination.  The operator then enters the user request into the system.  The request is placed in the transmission queue.

('992 Patent, Col. 14:49-63.)

United States District Court

For the Northern District of California

1    The Court finds that the construction of the word "user" should make clear that a "user" is

2    not an "operator" as those terms are used in the specification.

3    The Court construes "**user**" as follows:

**In a distribution method as disclosed in Claim 19 of the '992 Patent, in which a transmission system sends information to receiving systems at remote locations in response to a user's request, the word "user" means "a person who requests information from items in the transmission system." Any person acting as part of the transmission system, such as an operator, is not a user or a subscriber.**

7    **7.    "items. . .containing information"**

8    The parties dispute the proper construction of the phrase "items. . .containing information" as

9    that phrase is used in Claim 19 of the '992 Patent.

10    In addition to the phrase "items containing information," the specification of the '992 Patent

11    uses the following related phrases: "items," "information from items," "items in the source material

12    library," "information in the items," "items having information," and "items of information."

13    In the July 12 Order, the Court construed the phrase "items containing information" as

14    follows:

The Court construes the term "items containing information" to mean **"items containing information in analog or digital format."** The limitation requiring the information be stored in **analog or digital** format is necessary as the conversion means element 113 only converts analog and digital inputs into a "formatted data" output.[4]

(July 12 Order at 11, citing '992 Patent, figure 2a.)

18    The current dispute is whether the word "items" as used in the '992 Patent refers to physical

19    items. The specification refers to "items" as follows:

The source material library 111 may include different types of materials including television programs, movies, audio recordings, still pictures, files, books, computer tapes, computer disks, documents of various sorts, musical instruments, and other physical objects. These materials are converted to or recorded on a media format compatible to the digital and analog inputs of the system prior to being compressed and stored in a compressed data library 118.

_____

[4] The Court inserted this footnote following the definition: "Neither the claims nor the specification of the '992 patent disclose any structure for converting information in the 'items' to analog or digital form as required by the 'conversation means,' before the items are stored in the library means. The claims and the specification disclose structure (figure 2a (113)), which converts only analog or digital information. Before the items are stored, the information in the 'items' stored in the library means must out of necessity already be in analog or digital format." (July 12 Order at 11, n. 6.)

14

**United States District Court**
For the Northern District of California

('992 Patent, Col. 6:10-19.)  The Court finds that a proper reading of the specification renders that the word "items" means physical objects and not the "information" which might be contained in the physical objects.[5]  For example, a computer file, would be information.  The media used to store the computer file, such as a computer disk or a computer tape, in the source material library would be a physical item containing the information.

The Court defines **"items. . .containing information"** as follows:

> **In a distribution method as disclosed in Claim 19 of the '992 Patent, in which, responsive to requests from a user identifying "items" in a transmission system "containing information," information is sent from the transmission system to receiving systems at remote locations, the phrase "items containing information" means "physical items, such as video tapes, film, or computer disks, which contain audio information, video information or both."**

**8.    "information from items"**

Claim 19 discloses a method for storing in the transmission system, "information from items" in a compressed data form.  The parties dispute the proper construction of the phrase "information from items."

Given the Court's previous construction of "items containing information," the Court defines **"information from items"** as follows:

> **In a distribution method as disclosed in Claim 19 of the '992 Patent, in which a transmission system sends information to receiving systems at remote locations in response to a user's request, "information from items" refers to audio information, video information or both audio and video information, which is derived by the transmission system from a physical item such as a tape, a film, or a computer storage disk.**

**9.    "storing . . .information . . . in a compressed data form the information including an identification code and being placed into ordered data blocks".**

Claim 19 provides in relevant parts:

A distribution method * * *comprising the steps of:

---

[5] A literal reading of Claim 19 is that the user requests "items containing information" (e.g., a video tapes) and that the items are "to be sent" from the transmission system to receiving systems. Thus, under this literal reading, the video tapes themselves would be sent.  However, the specification makes it clear that the invention is not one in which the video tape is sent, but one in which movies are extracted from the video tapes, processed, and only the movies (information) are sent to the receiving systems.

**United States District Court**
For the Northern District of California

1   **storing**, in the transmission system, **information** from items **in a compressed data
2   form**, the information including an identification code and being placed into ordered
    data blocks; . . .

3       The parties dispute the proper construction of this first "storing" step in the distribution

4   method.  Claim 19 contains a second storing step which is part of the receiving system.  The Court

5   will refer to this first "storing" step as the "storing information in a compressed data form" step.  As

6   part of its construction of this first step, the Court is asked to decide when, in the disclosed method,

7   the unique identification code is assigned.

8       The specification of the '992 Patent discloses as an invention both apparatus and method

9   claims.  The apparatus disclosed is a system for distribution of audio and video information.  Claim

10  19 is a "distribution method" drawn to the inherent functions of this distribution apparatus.  In

11  construing the words and phrases of Claim 19, the Court relies on a description of an embodiment of

12  the method which is contained in Figure 7 and in the specification at column 18, line 53.[6]  The

13  distribution method in Figure 7 must be performed in the following sequence:

14      (a) retrieve information for selected items,

15      (b) assign a unique identification code (storage encoding)[7],

16  _____

17      [6] Column 18, lines 50-52 provides: "Method 400 assumes that the items have already been
    stored in compressed data library 118."  This provision contradicts the method illustrated in Figure 7
18  and described in Column 18: 53-19:36.

19      [7] The specification defines "storage encoding" and by its definition, it is clear that "storage
    encoding" is a step in the method different from "storing information in compressed data form."  The
20  specification provides:
        Prior to being made accessible to a user of the transmission and receiving system of the
21      present invention, the item must be stored in at least one compressed data library 118, and
        given a unique identification code by identification encoder 112.  **Storage encoding**,
22      performed by identification encoder 112, aside from giving the item a unique identification
        code, optionally involves logging details about the item, called program notes, and assigning
23      the item a popularity code.  **Storage encoding may be performed just prior to conversion**
        [conversion means 113] of the item for transmission to reception system 200, **at any time**
24      **after starting the conversion process** [conversion means 113] , **or after storing the item in**
        **the compressed data library** 118.
25  ('992 Patent, Col. 6:35-47.)
        Thus, assigning a unique identification code and other optional encoding of details or notes,
26  all of which are called "storage encoding," may be performed: (a) just before conversion of the data
    to a suitable format for transmission; (b) during conversion of the data to a suitable format for
27  transmission; or (c) after the data has been stored in the compressed data library.

28

1        (c) converting and formatting,

2        (d) ordering into addressable data blocks,

3        (e) compressing,

4        (f) compressed data formatting and storing into compressed data library,

5        (g) transmitting the information in response to a user request,

6        (h) receive at remote location,

7        (I) buffer the data,

8        (j) playback at time requested.

9 In light of the specification, the Court finds that before the "storing information in a compressed data

10 form" step is performed, the information must already have been assigned an identification code,

11 converted, placed in ordered data blocks and compressed.

12        Other passages in the specification clarify that the "storing information in a compressed data

13 form" step takes place <u>after</u> the unique identification code has been assigned:

14        In the preferred embodiment, after identification encoding is performed by identification
encoder 112, the retrieved information is placed into a predetermined format as formatted
15        data by the converter 113.

16                * * *

17        In accordance with a preferred embodiment of the present invention, the transmission system
100 may further comprise **compressed data storing means**, coupled to the compression
18        means, **for storing as a file the compressed sequenced data with the unique
identification code received from the data compression means**. After compression
19        processing by compressor 116, the compressed audio and video data is preferably formatted
and placed into a single file by the compressed data storage means 117. The file may contain
20        the compressed audio and/or video data, time markers, and the program notes. **The file is
addressable through the unique identification code assigned to the data by the**
21        **identification encoder** 112.

22 ('992 Patent, Col. 6:58-62; Col. 10:17-30.)  There is no place in the specification which describes

23 how the unique identification code could be stored <u>after</u> the information has been placed in the

24 compressed data library.  In all embodiments, storing in compressed data form is described as being

25 done with the unique identification code already assigned.  Accordingly, in construing the step under

26 consideration, the Court will define it so that the unique identification code is assigned after the step

27 of "retrieving information from the source material library" and before the step of "placing data in

28 predetermined format."

1    The first step of the method disclosed in Claim 19 is storing information in the compressed

2    data library which, according to the specification, is performed by the compressed data storing

3    means.  Based on the language of this storing step, the information must have been assigned an

4    identification code, compressed and put into order data blocks before the storing step.

5    The specification of the '992 Patent provides that, if information in the transmission system

6    has already undergone a process otherwise performed by the transmission system, it may be passed

7    directly to the compressed data formatter:

8        In some cases, such as in inter-library transfers, incoming materials may be in a
         previously compressed form so that there is no need to perform compression by
9        precompression processor 115 and compressors 128 and 129.  In such a case,
         retrieved items are passed directly from identification encoder 112 to the compressed
10       data formatter 117.

11   ('992 Patent, Col. 7: 44 - 49.)  It is apparent that assigning an identification code, formatting and

12   compressing are essential functions which must be performed on the information before transmitting

13   the information to the reception system.  Accordingly, the Court interprets the storing step as

14   operating on information which has already been encoded, formatted and compressed prior to the

15   start of the method.   Indeed, unless the "storing" step is construed in this fashion, an argument could

16   be made that Claim 19 omits steps in the sequence which are essential to the distribution method as

17   taught in the specification.

18   The step uses the phrase: "**being placed into ordered data blocks**."  To preserve the validity

19   of the Cl aim, the Court construes this phrase as "**having been placed into ordered data blocks.**"

20   The Court construes **"storing . . . information from items in compressed data form"** as

21   follows:

22       **In a distribution method as disclosed in Claim 19 of the '992 Patent, in which a
         transmission system sends information to receiving systems at remote locations in
23       response to a user's request, "storing . . . the information in a compressed data form,
         the information including an identification code and being placed into ordered data
24       blocks" means: "storing the information, along with an identification code, in the
         compressed data library of the transmission system, when, previously to storing:  (a) an
25       identification code has already been assigned to the information; (b) the information
         has been placed into ordered data blocks, and (c) the information has been
26       compressed."**

27

28

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

**10.     "at least a part [portion] of the stored information"**

Claim 19 provides in pertinent parts:

A distribution method responsive to requests from a user identifying items in a transmission system containing information to be sent from the transmission system to **receiving systems at remote locations**, the method comprising the steps of:

> storing, in the transmission system, information from items in a compressed data form, the information including an identification code and being placed into ordered data blocks;

> sending a request, by the user to the transmission system, for **at least a part of the stored information** to be transmitted to one of the receiving systems at one of the remote location selected by the user;

> sending **at least a portion of the stored information** from the transmission system to the receiving system at the selected remote location.

The Court finds as follows:

**The phrases "portion of the stored information" and "part of the stored information," as used in Claim 19 of the '992 are synonymous.**[8]

The Court does not find it necessary to further construe these phrases.

**11.     "playing back the stored copy of the information using the receiving system"**

Claim 19 provides in pertinent parts:

A distribution method responsive to requests from a user identifying items in a transmission system containing information to be sent from the transmission system to receiving systems at remote locations, the method comprising the steps of:

> * * *

> sending a request, by the user to the transmission system, for at least a part of the stored information . . .

> sending at least a portion of the stored information from the transmission system to the receiving system at the selected remote location;

> receiving the sent information by the receiving system at the selected remote location;

> storing a complete copy of the received information in the receiving system at the selected remote location; and

---

[8] The same terms appear in Claims 2 and 5 of the '275 Patent.  Unless otherwise ordered, the Court's construction of these phrases as they appear in Claim 19 of the '992 Patent applies to these phrases as they appear in the '275 Patent.

19

1    **playing back the stored copy of the information using the
     receiving system** at the selected remote location at a time requested
2    by the user.

3    This step in the method uses the phrase "playing back," which is commonly understood to

4    mean to reproduce stored audio and video information in real time.  In this step playing back is

5    accomplished by "using the receiving system."  The specification does not disclose any

6    embodiments of the "receiving system" that includes speakers or video displays which would

7    facilitate "playback."  Instead, the specification discloses that the "receiving system" outputs to

8    "receiving devices" of the user for "playback:"

9        The separated audio and video information are respectively decompressed by audio
         decompressor 209 and video decompressor 208.  The decompressed video data is then sent
10       simultaneously to converter 206 including digital video output converter 211 and analog
         video output converter 213.  The decompressed audio data is sent simultaneously to digital
11       audio output converter 212 and analog audio output converter 214.  The **outputs** from
         converters 211-214 are produced in real time.  The real time **output signals** are output to a
12       playback system such as a TV or audio amplifier.

13       The real time output signals are output to a playback system such as a TV or audio
         amplifier.  They may also be sent to an audio/video recorder of the user.  By using the
14       reception system 200 of the present invention, the user may utilize the stop, pause,
         and multiple viewing functions of the receiving device.  Moreover, in a preferred
15       embodiment of the present invention, the output format converters may be connected
         to a recorder which enables the user to record the requested item for future multiple
16       playbacks.

17   ('992 Patent, Col. 18:27-45.)

18   The specification discloses embodiments of the "receiving system" which have playback

19   controls, though there are no disclosures of speaker or video displays:

20       The reception system 200 has playback controls similar to the controls available on a
         standard audio/video recorder.  These include: play, fast forward, rewind, stop, pause,
21       and play slow.

22   ('992 Patent, Col. 17:35-38.)

23   //

24

25

26

27

28

20

The specification discloses two configurations of a reception system, "direct connection"[9] and "non-direct connection."  However, the specification discloses no structure which would allow a user to communicate directly with the reception system in a non-direct connection configuration. The Court interprets the embodiment of the reception system with playback controls as referring to a direct connection configuration.  Accordingly, the "playback" step under consideration is defined to include both embodiments.

The Court construes the term **"playing back ... using the receiving system,"** as follows:

**In a distribution method as disclosed in Claim 19 of the '992 Patent, in which a transmission system sends information to receiving systems at remote locations in response to a user's request, "playing back the stored copy of the information using the receiving system" means "using the receiving system to output the stored copy of the information in real time."**

**12.    "at a time requested by the user"**

Claim 19 provides in pertinent parts:

A distribution method responsive to requests from a user identifying items in a transmission system containing information to be sent from the transmission system to receiving systems at remote locations, the method comprising the steps of:

> * * *
> sending a request, by the user to the transmission system, for at least a part of the stored information . . .
>
> sending at least a portion of the stored information from the transmission system to the receiving system at the selected remote location;
>
> receiving the sent information by the receiving system at the selected remote location;
>
> storing a complete copy of the received information in the receiving system at the selected remote location; and
>
> playing back the stored copy of the information using the receiving system at the selected remote location **at a time requested by the user**.

---

[9] In **direct connection configurations**, such as reception system 200 shown in Figures. 1e and 1f, the user preferably select the reception system 200 to which the requested material is sent, and optionally selects the time playback of the requested material as desired.  Accordingly, the user may remotely access the transmission system 100 from a location different than the location of receptions system 200 where the material will be sent and/or played back.  Thus, for example, a user may preferably call transmission system 100 from work and have a movie sent to their house to be played back after dinner or at any later time of their choosing."  ('992 Patent, Col. 5:10-21.)

United States District Court

For the Northern District of California

1    The Court finds that the "time" in the phrase "at a time requested by the user" refers to the

2    time the user wants to receive the information at a device, such as a TV or VCR.  This method gives

3    the user the ability to designate a playback time.  In this regard, the parties raise two issues: 1)

4    whether designation of a playback time is optional or mandatory; 2) <u>when</u>, i.e., at what point is the

5    playback time designated.

6    With respect to the first issue, to determine the optional or mandatory nature of the playback

7    time, Court examines Figure 3, which is a flowchart of an embodiment of a distribution method

8    practicing the claimed invention.  Step 3090 of Figure 3 provides:  "User may enter time and

9    destination."  The use of the word "may" suggests that the playback time is optional rather than

10   mandatory.  However, the specification does not contain the optional language of "may:"

11   The user then indicates whether the confirmation performed in step 3070 is correct (step
     3080).  If the confirmation performed in step 3070 is correct, **the user so indicates and then**
12   **inputs a desired delivery time and delivery location** (step 3090).

13   ('992 Patent, Col. 14:29-33.)  The specification does not disclose a means for the user to

14   communicate with the transmission system after making the request for transmission of the

15   information.  This leads the Court to the second issue—at what point is the playback time

16   designated.

17   First, a reasonable interpretation of the phrase "at a time requested by the user" is one in

18   which "at the time" the user makes a request to the transmission system to transmit the information,

19   the user designates a playback time which is at the time of the transmission or at a time later than the

20   time of the transmission.  While the transmission request and the playback time request must be

21   made by the user to the transmission system at the same time, the actual playback time may be later

22   than the transmission request time.  This interpretation is supported by the specification.  Figure 6 is

23   a block diagram of an embodiment of the reception system.  The specification of Figure 6 discusses

24   playback time as follows:

25   In the reception system 200 of the present invention, **the user may want to playback the**
     **requested item from the source material library 111 at a time later than when initially**
26   **requested**.  If that is the case, the compressed formatted data blocks from receiver format
     converter 202 are stored in storage 203.  Storage 203 allows for temporary storage of the
27   requested item until playback is requested.

28   When playback is requested, the compressed formatted data blocks are sent ot [sic] data

22

1    formatter 204.  Data formatter 204 processes the compressed formatted data blocks and
     distinguishes audio information from video information.
2
('992 Patent, Col. 18:14-26.)  It is apparent that the user would be required to specify a playback
3
time as part of the initial request.  However, the user could specify a playback time which is later in
4
time than the time when the request for transmission itself is being made.  After the material is
5
transmitted, it would be stored automatically in "storage 203" in the reception system.  When the
6
specified delayed playback time arrives, the system would automatically output it in real time.
7
Although a delay in output would occur, the time for output would have been specified at the time of
8
the initial request.  There is no means disclosed in the specification by which the user can
9
communicate with the transmission system to modify the designated delayed output time.
10
          Second, there is support in the specification for an embodiment in which the user initiates
11
playback after the information has been received by the reception system.  The specification
12
discloses an embodiment in which the user is able to request a particular song, for example, directly
13
from the information "buffered"[10] in the reception system:
14
          For example, a user may desire to listen to a particular song.  They may preferably enter the
15          song number either when requesting the item from the compressed data library 118 and only
          have that song sent to their receiving system 200 or they may preferably select that particular
16          song from the items buffered in their receiving system 200.

17   ('992 Patent, Col. 8:36-42.)  In another provision, the specification discloses an embodiment in

18   which the reception system has playback controls which would allow the user to communicate a

19   playback request directly to the reception system:

20          The reception system 200 has playback controls similar to the controls available on a
            standard audio/video recorder.  These include:  play, fast forward, rewind, stop,
21          pause, and play slow.

22   ('992 Patent, Col. 17:35-39.)

23   //

24

25

26   _____

27          [10] The Court interprets "buffered," in this context, to mean "temporarily stored."  There is no
     mention in the specification of what kind of a buffering device a user would have in such a receiving
28   system.

23

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    These embodiments in which the user is able to communicate a playback request directly

2    from storage[11] in the reception system are described in the specification as direct connection

3    configurations in which the reception system is located at the user's premises:

4    In **direct connection configurations**, such as reception system 200 shown in FIGS.
     1e and 1f, the user preferably select the reception system 200 to which the requested
5    material is sent, and **optionally** selects the time playback of the requested material as
     desired.  Accordingly, the user may remotely access the transmission system 100
6    from a location different than the location of receptions system 200 where the
     material will be sent and/or played back.  Thus, for example, a user may preferably
7    call transmission system 100 from work and have a movie sent to their house to be
     played back after dinner or at any later time of their choosing.

8
     In **non-direct connection** reception systems such as shown in reception system 200
9    of FIG. 1f, intermediate storage device 200c may preferably include, for example,
     sixteen hours of random access internal audio and video storage.  A reception system
10   with such storage is capable of storing several requested items for future playback.
     The user could then view and/or record a copy of the decompressed requested
11   material in real time, or compressed in non-real time, at a time of their choosing.
     Accordingly, the user would not have to make a trip to the store to purchase or rent
12   the requested material.

13   ('992 Patent, Col. 5:10-33.)  There is no detail for these embodiments.  In any event, neither of these

14   references to user controls at the reception system lead the Court to come to a different conclusion

15   that the phrase "at the time requested by the user" should be construed to require that a playback

16   time must be designated at the time of the initial transmission request.

17   The Court defines at **"a time requested by the user"** as follows:

18   **In a distribution method as disclosed in Claim 19 of the '992 Patent, in which a
     transmission system sends information to receiving systems at remote locations
19   in response to a user's request, in a nondirect connection configuration, the
     phrase "at a time requested by the user" means "at the output time specified by
20   the user when the user makes the request to the transmission system to transmit
     information."  At the time the user makes a request to the transmission system
21   to transmit information, the user must designate an output time.  At the time of
     the transmission request, a user may designate a delayed output time.  If so, the
22   information is transmitted to the receiving system where it is stored and at the
     pre-designated time, the information is automatically output by the receiving
23   system.**

24   //

25

26

_____

27        [11] The specification states that there can be "storage" in the reception system in a direct
     connection configuration:  "Since items are preferably stored on random access media. . . ."  (See
28   '992 Patent, Col. 17:38-39.)

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.**     **The '992 Patent - Claim 20**

Claim 20 of the '992 Patent provides:

The distribution method as recited in claim 19, wherein the information in the items includes **analog and digital signals**, and wherein **the step of storing the information comprises** the steps, performed by the transmission system, of:

converting the analog signals of the information to digital components;

formatting the digital signals of the information;

**ordering the converted analog signals and the formatted digital signals into a sequence of addressable data blocks** and;

compressing the ordered information.

**1.     The Preamble of Claim 20**

As with Claim 19, the Court finds that the Preamble of Claim 20 of the '992 Patent is limiting because the terms in the Preamble are used as antecedents to the elements of the claim.

**2.     Arguable Ambiguity of Claim 20**

The Court finds it helpful to first set forth what it has found as arguable ambiguity with certain aspects of Claim 20 of the '992 Patent.

The elements of a method claim are manipulative steps that are performed on an article or workpiece.  In Claim 20, the article being worked on is the "information from items" as disclosed in Claim 19.  As discussed above, Claim 19 imposes limitations on the "information," namely, that it has been compressed, assigned an identification code, and placed into ordered data blocks prior to the storing step.  Claim 20 further limits the "information" to being in analog and digital signals.

The Preamble provides:  "The distribution method as recited in claim 19, **wherein the step of storing** the information **comprises**. . . ."  Thus, Claim 20 substitutes its "storing" steps (converting, formatting, ordering and compressing) for the "storing" steps of Claim 19.  However, the steps of "storing" as disclosed in Claim 20 (converting, formatting, ordering and compressing) are attributes of the information which, of necessity, must be already present in the information when it is presented for "storing" in the performance of Claim 20.  As set out above, through its limitations, Claim 19 discloses a storing step on a workpiece to which an identification code must have already been assigned and already have been placed into ordered data blocks and compressed.

1  The fact that the method claimed in Claim 20 requires the performance of steps which of necessity

2  are already present in the information before the steps commence renders Claim 20 arguably

3  indefinite.

4       Another aspect of Claim 20 that makes it arguably indefinite is that it never discloses the

5  actual step of "storing in the compressed data library."  The Court finds that "storing" is an essential

6  step of Claim 20 which has been omitted.  The Court invites the parties to address the cited apparent

7  ambiguities of Claim 20 in appropriate motions.

8       Furthermore, the Federal Circuit has held that an independent claim should not be interpreted

9  in a way that is inconsistent with a dependent claim.  <u>Wright Med. Tech., Inc. v. Osteonics Corp.</u>,

10  122 F.3d 1440, (Fed. Cir. 1997) (citing <u>Southwall Techs., Inc. v. Cardinal IG Co.</u>, 54 F.3d 1570,

11  1579 (Fed. Cir.), cert. denied, 516 U.S. 987 (1995)).  Accordingly, the Court also invites the parties

12  to address any implications of the Court's analysis of Claim 20 on the validity of Claim 19.

13      Notwithstanding the cited arguable ambiguity, the Court proceeds to consider other terms in

14  Claim 20.

15  **3.    "analog and digital signals"**

16      The Court has received no evidence that one skilled in the relevant art at the time of the

17  application was aware of an item containing information that would contain both analog and digital

18  signals.  However, presuming that such an item is conceivable and could be part of the transmission

19  system, the phrase "analog and digital signals" has a common meaning which require no further

20  construction.

21      A question is raised as to whether the transmission system, which performs these steps, is

22  capable of performing simultaneous operations on items containing both analog **and** digital signals.

23  The apparatus claims pertaining to the transmission system have separated these functions.  Claim 1

24  claims a generic conversion step, and Claims 3 and 4, depending from Claim 1, separately claim to

25  convert analog and digital signals respectively.

26  *//*

27

28

United States District Court
For the Northern District of California

**4.    "ordering the converted analog signals and the formatted digital signals into a sequence of addressable data blocks"**

Claim 20 describes a method for storing the analog and digital signals involving "converting," "formatting," "ordering," and "compressing."  The parties dispute the proper construction of the "converting," "formatting" and "ordering" steps.

The specification describes the process of converting and formatting the information:

When the information from identification encoder 112 is digital, the digital signal is input to the digital input receiver 124 where it is **converted** to a proper voltage.  A **formatter** 125 sets the correct bit rates and encodes into least significant bit (lsb) first pulse code modulated (pcm) data.  Formatter 125 includes **digital audio formatter 125a** and **digital video formatter 125b**.  The digital audio information is input into a digital audio formatter 125a and the digital video information, if any, is input into digital video formatter 125b.  **Formatter 125 outputs the data in a predetermined format**.

When the retrieved information from identification encoder 112 is analog, the information is input to an **analog-to-digital converter** 123 to convert the analog data of the retrieved information into a series of digital data bytes.  **Converter 123 preferably forms the digital data bytes into the same format as the output of formatter 125.**

('992 Patent, Col. 7:1-18.)

In the July 12 Order, the Court construed the phrase "ordering means for placing the formatted data into a sequence of addressable data blocks" as a means-plus-function element.  In a means-plus-function claim, the claims specify the function and the specification details the structure.  The Court identified the "time encoder" (FIG. 2a 114) and its equivalents as the corresponding structure.

Claim 20 is not a means-plus-function claim.  Thus, importing limitations from the specification is not appropriate.  In Claim 20, the phrase  "ordering into ... a sequence of addressable data blocks" is a very broad limitation which could include time encoding, as well as other ways of generating addressable data blocks.  The parties have requested that the Court construe the word "addressable" as it applies to the data blocks.  The specification contains the following with respect to the phrases "address" and "addressability:"

Stored items are preferably accessed in compressed data library 118 through a unique address code.  The unique address code is a file address for uniquely identifying the compressed data items stored in the compressed data library section of a library system.  This file address, combined with the frame number, and the library system address allow for complete addressability of all items stored in one or more compressed data libraries 118.

27

United States District Court

For the Northern District of California

1   ('992 Patent, Col. 10:46-57.)  It is clear that there are multiple uses of the phrases "address" and

2   "addressable."  The ordering step in Claim 20 follows the conversion and formatting steps, and

3   precedes the compression step.  The claim element requires that the formatted and converted data be

4   ordered into a sequence of addressable data blocks.  The term "addressable" in the context of Claim

5   20 refers to the addressabilty of portions of the information within a file, and is not physical storage

6   addresses.

7          The Court construes **"ordering the converted analog signals and the formatted digital**

8   **signals into a sequence of addressable data blocks"** as follows:

9          **In a distribution method in which a transmission system stores the information,**
    **"ordering the converted analog signals and the formatted digital signals into a**
10   **sequence of addressable data blocks" means "in the transmission system placing**
    **the converted analog signals and the formatted digital signals into a sequence of**
11   **data blocks, such that the ordering of the data blocks permits the retrieval of**
    **portions of information from items."  "Addressable" does not refer to physical**
12   **storage locations, but rather to positions relative to the beginning of a file**
    **containing information.**

13  **C.    The '992 Patent - Claim 21**

14          Claim 21 of the '992 Patent provides:

15          The method of claim 19 wherein the step of storing the items includes the substep of

16                 storing the items in a plurality of compressed audio and video libraries in the
17                 transmission system.

18  **1.     The Order of the Steps of Claim 21**

19          The parties dispute the order of the steps of Claim 21.  Claim 19, in the first "storing" step,

20  has only one step, namely that of "storing" information in the compressed data library 118,

21  performed by the compressed data storing means 117.  Claim 21 further limits Claim 19 to storing in

22  more than one compressed data library.  Claim 21 also necessitates that the first "storing" step in

23  Claim 19 actually performs the step of storing information in the compressed library.  If this were

24  not the case, Claim 21 would be invalid.  Independent claims are not to be construed to invalidate

25  dependent claims.

26          The Court construes Claim 21 the '992 Patent as follows:

27          **In a distribution method in which a transmission system is storing information**
    **in a compressed data form, the storing of the information can be in any order in**
28   **several compressed data libraries.**

28

United States District Court

For the Northern District of California

**D.      The '992 Patent - Claim 41**

Claim 41 of the '992 Patent provides:

A method of transmitting information to **remote locations**, the transmission method comprising the steps, performed by a **transmission system**, of:

> **storing** items having information in a **source material library**;
>
> retrieving the information in the items from the source material library;
>
> assigning a unique identification code to the retrieved information;
>
> **placing the retrieved information into a predetermined format as formatted data;**
>
> **placing the formatted data into a sequence of addressable data blocks**;
>
> compressing the formatted and sequenced data blocks;
>
> storing, as a file, the compressed, formatted, and sequenced data blocks with the assigned unique identification code; and
>
> sending at least a portion of the file **to one of the remote locations.**

**1.      The Preamble of Claim 41**

For the reasons stated with respect to Claim 19, the Court finds that the Preamble of Claim 41 of the '992 Patent is limiting in that the method of transmitting information must be performed by a "transmission system," capable of performing the method.

**2.      The Order of the Steps of Claim 41**

The parties agree that the steps of Claim 41 must be performed in the order enumerated in the claim. However, there is a dispute with respect to whether a prior step must be completed before a succeeding step may commence.  (See Joint Chart of the Parties Proposed Definitions for Claim Terms From the '992 and '275 Patents at 9, ¶ 22.)

The language of Claim 41 makes each step antecedent to each succeeding step.  As discussed in the order of the steps of Claim 19, a step, which is an antecedent to a succeeding step, must commence before the succeeding step commences, and the antecedent step must finish before the succeeding step can finish.

//

**United States District Court**
For the Northern District of California

**3.      "transmission system"**

The Court construes the phrase **"transmission system"** as used in Claim 41 as having the same meaning as given to the phrase as used in Claim 19.

**4.      "storing items having information in a source material library"**

The parties dispute the proper construction of the phrase "storing items having information in a source material library."

As previously construed, the word **"items"** means physical items, such as video tapes, film, or computer disks, which contain audio information, video information or both.

The Court construes the phrase, **"items having information"** as used in Claim 41 to have the same meaning given to the phrase "items . . .containing information" as used in Claim 19.

The word **"storing"** is an active verb with a common meaning.  The specification is silent as to any capabilities of the source material library to do any function other than to hold items having information.  Since a step in a method must be a manipulative step or act, words such as "placing" or "putting" are appropriate synonyms for "storing" in the context of Claim 41.

In the July 12 Order, the Court defined the "source material library" as follows:

> The Court finds that the plain and ordinary meaning of the term "library" could mean either a collection of books or a place where books could be stored. The specification supports defining library to be a collection of original material, which contains analog or digital information, that the transmission system may convert, compress, and transmit. In other words, **the specification defines the source material library as a collection of original sources of information**.

(July 12 Order at 25.)  The Court finds no reason to abandon this construction.

Accordingly, the Court construes the phrase "**storing items having information in a source material library**" as follows:

> **In a transmission method in which information from items having information is transmitted to remote locations and in which the transmission system performs the step of storing the items, the phrase "storing items having information in a source material library" means "placing physical items containing audio information or video information or both into a collection of original sources of information."**

//

30

**United States District Court**
For the Northern District of California

**5.      "placing the formatted data into a sequence of addressable data blocks"**

Consistent with its construction of Claim 20, the Court construes the phrase **"placing the formatted data into a sequence of addressable data blocks"** of Claim 41 of the '992 Patent as follows:

> **In a transmission method in which information is transmitted to remote locations and in which the transmission system performs the steps of placing the information into a predetermined format, the phrase "placing the formatted data into a sequence of addressable data blocks" means placing the formatted information into a sequence of data blocks, such that the ordering of the data blocks permits the retrieval of portions of information from items." "Addressable" does not refer to physical storage locations, but rather to positions relative to the beginning of a file containing information.**

**6.      "one of the remote locations"**

The parties dispute whether the phrase "one of the remote locations" means "one or more" remote locations.  The phrase has a plain and ordinary meaning.  There is nothing in the specification or prosecution history which would support a specialized meaning.

The Court construes the phrase "**one of the remote locations**" as follows:

> **In a transmission method for transmitting information to remote locations comprising the steps performed by a transmission system of storing the information as a file and sending at least a portion of the file to one of the remote locations, the phrase, "one of the remote locations" means "a single remote location."**

**E.      The '992 Patent - Claim 42**

Claim 42 of the '992 Patent provides:

A transmission method as recited in claim 41, wherein the step of placing **further includes** the steps of:

> A/D converting analog signals of the retrieved information into  a series of digital data bytes; and
>
> **converting the series of digital data bytes into formatted data with a predetermined format.**

**1.      The Order of the Steps of Claim 42**

It is undisputed that the steps of the elements of Claim 42 must be performed in the order that they appear in the claim.  It is also undisputed that Claim 42 further limits the step of "placing ... as formatted data" of Claim 41.  Claim 42 expressly states that it is adding further steps to Claim 41.  There is a dispute with respect to whether the steps of Claim 42 are performed either before, after, or

31

simultaneously with the relevant steps of Claim 41.  Specifically, with respect to the "placing" step, Claim 41 provides:

> A method of transmitting information to remote locations, the transmission method comprising the steps, performed by a transmission system, of:
>
> * * *
>
> **placing the retrieved information into a predetermined format as formatted data;**

The Court finds that, if as required by Claim 42, the additional step "converting the series of digital data bytes **into formatted data with a predetermined format**" is added to the step of "placing **the retrieved information** into a **predetermined format as formatted data**" as required by Claim 41, then Claim 42 duplicates the "placing" step of Claim 41.  This renders Claim 42 arguably indefinite as requiring extraneous and duplicative steps.  The Court invites the parties to address the arguable indefiniteness of Claim 42 in appropriate motions.

**F.      The '992 Patent - Claim 43**

Claim 43 of the '992 Patent provides:

> A transmission method as recited in claim 41, wherein the step of placing **further includes** the steps of:
> > converting digital signals of the retrieved information into predetermined voltage levels; and
> >
> > **converting the predetermined voltage levels into formatted data with a predetermined format.**

Claim 43 is a dependent claim from Claim 41 and adds as a limitation that the step of "placing the retrieve information into a predetermined format as formatted data" operates on digital information.  The Court's finding with respect to the sequence of the steps and of arguable indefiniteness of Claim 42 applies with equal force to Claim 43.  The Court invites the parties to address the arguable indefiniteness of Claim 43 in appropriate motions.

**G.      The '992 Patent - Claim 45**

Claim 45 of the '992 Patent provides:

> A transmission method as recited in claim 41, wherein the storing step further comprises the step of:
> > **separately storing a plurality of files**, each including compressed, sequenced data blocks.

United States District Court
For the Northern District of California

**1.      "separately storing a plurality of files"**

Claim 45 is a method claim which depends from the method disclosed in Claim 41 and provides for separately storing a plurality of files.  The specification does not describe storage in multiple files.  The only description is storing a single file with "compressed, sequenced data blocks:"

> After compression processing by compressor 116, the compressed audio and video data is preferably formatted and placed into a **single file** by the compressed data storage means 117.

> * * *

> After the data is processed into a file by the compressed data storage means 117, it is preferably stored in a compressed data library 118.

('992 Patent, Col. 10:23-26; Col. 10:36-39.)  In light of the fact that there is no description of storage in multiple files, the Court declines to construe the phrase "separately storing a plurality of files" as arguably indefinite.[12]

**H.      The '992 Patent - Claim 46**

Claim 46 of the '992 Patent provides:

> A transmission method as recited in claim 45, further comprising the steps, performed by the transmission system, of:

> generating a listing of available items;

> **receiving transmission requests to transmit available items**; and

> retrieving stored formatted data blocks corresponding to requests from users.

The Court requires further briefing on the sequence of Claim 46, particularly with respect to when the element generating the "list of available items" takes place.  In addition, the Court requires additional briefing with respect to the following specification:

---

[12] Claim 45 seems to be a method claim derived from apparatus Claim 6, which provides: A transmission system as recited in claim 2, wherein the compressed data storing means further comprises:

compressed data library means for **separately storing a plurality of files**, each including at least one compressed, sequenced data block.

Claim 6 claims that the compressed data library means 118 is capable of storing (holding) more than one file.  In other words, "separately storing a plurality of files" is an attribute of the compressed data storing means 118.  The attribute of being capable of storing a plurality of files does not lend itself to conversion to a manipulative step.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

The library access interface 121 in the reception system 200 preferably includes a title window where a list of available titles are alphabetically listed.  This window has two modes: local listing of material contained within the library system control computer 1123, and library listing for all available titles which may be received from the available, remotely accessible libraries. The titles listed in this window are sent from the database on the library system control computer 1123 or the remote order processing and item database 300.

('992 Patent, Col. 17:44-53.)  The Court questions whether this is an error and should read in

transmission system as shown in Figure 2b.

## II.    THE '275 PATENT

## A.    The '275 Patent - Claim 2

Claim 2 of the '275 patent provides:

A distribution method responsive to requests from a user identifying items in a **transmission system\*[13]** containing information to be sent from the transmission system to **receiving systems\*** at **remote locations\*[14]**, the method comprising the steps of:

> **storing, in the transmission system, information from items in a compressed data form\***, the **information including an identification code and being placed into ordered data blocks\***;

> sending a request, by the user to the transmission system, for at least a part of the stored information to be transmitted to **a reception system associated with a receiving system** at one of the remote locations selected by the user;

> sending at least a portion of the stored information from the transmission system to the reception system;

> receiving the sent information by the reception system;

> storing a complete copy of the received information in the reception system; and

> **playing back** the stored copy of the information **from the reception system to the receiving system** at the **selected remote location** at a **time requested by the user**.

## 1.    The Preamble of Claim 2

For the reasons stated with respect to Claim 19 of the '992 Patent, the Court finds that the

Preamble of Claim 2 of the '275 patent is limiting in that the distribution method must be performed

---

[13] Each item identified with an asterisk (\*) is given the same meaning as the terms or phrases construed in the '992 Patent.

[14] The Court considers the phrase "remote locations," which is used in the Preamble, to be a statement of purpose.  This phrase does not limit the elements of the claim to having to send information to multiple receiving systems.  The language of the elements of the claim, which limits transmission to "one" location, is controlling.

by a "transmission system" which sends information to "receiving systems at remote locations" in response to requests from a "user."

**2.    "reception system associated with a receiving system at one of the remote locations selected by the user"**

Claim 2 of the '275 Patent requires the following step:

> sending a request, by the user to the transmission system, for at least a part of the stored information to be transmitted to a **reception system associated with a receiving system at one of the remote locations selected by the user**;

The parties dispute the proper construction of the phrase "reception system associated with a receiving system at one of the remote locations selected by the user."

In this step, the user makes a request to the transmission system to transmit information to a single reception system, which is selected by the user.  The selected reception system is one which is "associated with" a single receiving system.  Therefore, in order to perform this step the system must contain a "reception system" "<u>associated</u>" with a "receiving system at the remote location."  As discussed in Section **A4** above, the written description uses the phrases "receiving system" and "reception system" synonymously.  Accordingly, the Court finds that the method requires a configuration in which a "reception system" is associated with another "reception system."  Except for the language of the claim itself, there is no support in the written description for defining a configuration for one reception system communicating to another reception system.  This lack of support arguably could render the written description, based on the original application, inadequate to support the later filed Claim 2 of the '275 Patent.  <u>See</u> 35 U.S.C. §§112, 119, 120.

The specification does disclose embodiments in which a "reception system" outputs to a "receiving device."[15]   If the Court were to construe "receiving system" to mean a "receiving device"

---

[15] The separated audio and video information are respectively decompressed by audio decompressor 209 and video decompressor 208.  The decompressed video data is then sent simultaneously to converter 206 including digital video output converter 211 and analog video output converter 213.  The decompressed audio data is sent simultaneously to digital audio output converter 212 and analog audio output converter 214.  The outputs from converters 211-214 are produced in real time.  The real time output signals are output to a **playback system such as a TV or audio amplifier**.

The real time output signals are output to a playback system such as a TV or audio amplifier. They may also be sent to an audio/video recorder of the user.  **By using the reception system 200 of the present invention, the user may utilize the stop, pause, and multiple viewing functions of**

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

the potential indefiniteness discussed above would  be avoided.  However, such construction would give an inconsistent definition to the phrase "receiving system," in patents which are based on the same specification.  Accordingly, the Court declines to construe the term "reception system associated with a receiving system at one of the remote locations selected by the user," pending further proceedings with respect to whether Claim 2 of the '275 Patent complies with the written description requirement of 35 U.S.C. § 112.

**3.    "playing back" the stored copy of the information from the reception system to the receiving system"**

The last step of the distribution method disclosed in Claim 2 of the '275 Patent is:

**playing back** the stored copy of the information **from the reception system to the receiving system** at the selected remote location at a time requested by the user.

This step requires the reception system selected by the user to "playback" the received information to the receiving system.  "Playback" has a plain and ordinary meaning.  Playing back from the reception system to the receiving system is a form of communication between the systems.  As discussed in Section **A2** of this patent, there is no support in the written description for one reception system to communicate information to another reception system.

In addition, Title 37 of C.F.R. Section 1.83(a) requires:

(a) The drawing in a nonprovisional application **must show** every feature of the invention specified in the claims.

37 C.F.R. § 1.83(a) (1996).  Claim 2 of the '275 provides no drawings of a reception system communicating with the receiving system.  Therefore, the Court declines to give a construction to the phrase "playing back the stored copy of the information from the reception system to the receiving system" pending further proceedings to determine whether Claim 2 of the '275 Patent complies with the written description requirement of 35 U.S.C. §112.

//

_____

**the receiving device.**  Moreover, in a preferred embodiment of the present invention, the output format converters may be connected to a recorder which enables the user to record the requested item for future multiple playbacks.  ('992 Patent, Col. 18:27-45.)

United States District Court
For the Northern District of California

1

**B.**       **The '275 Patent - Claim 5**

2

Claim 5 of the '275 Patent provides:

3

A distribution method responsive to requests from a user identifying items in a transmission system containing information to be sent from the transmission system to receiving systems at remote locations, the method comprising the steps of:

4

5

storing, in the transmission system, information from items in a compressed data form, the information including an identification code and being placed into ordered data blocks;

6

7

sending a request, by the user to the transmission system, for at least a part of the stored information to be transmitted to a reception system associated with a receiving system at one of the remote locations selected by the user;

8

9

sending at least a portion of the stored information from the transmission system to the reception system over an **optical fiber communication path**;

10

receiving the sent information by the reception system;

11

storing a complete copy of the received information in the reception system; and

12

13

playing back the stored copy of the information **sent over a cable communication path** from the reception system to the receiving system at the selected remote location at a time requested by the user.

14

Claim 5 of the '275 patent is identical to Claim 2, except Claim 5 requires using an "optical

15

fiber communication path" to send information from the transmission system to the reception system

16

and requires using a "cable communication path" to playback the information from the reception

17

system to the receiving system. The requirement of Claim 5, that the reception system communicate

18

with a receiving system, raises the same written description issue addressed above. The Court will

19

defer consider of this claim pending further proceedings with respect to both claims.

20

**V.  CONCLUSION**

21

The Court has construed the words and phrases of the '992 and '275 Patents submitted for

22

construction. Other claims submitted for construction will be the subject of a subsequent Order.

23

The Court invites any party desiring to file motions with respect to this Third Claim Construction

24

Order to do so in accordance with the Civil Local Rules of the Court.

25

26

Dated: December 14, 2006

27

JAMES WARE
United States District Judge

28

United States District Court

For the Northern District of California

1  **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**
Alan P. Block blocka@hbdlawyers.com
2  Alfredo A. Bismonte abismonte@beckross.com
Annamarie A. Daley aadaley@rkmc.com
3  Asim M. Bhansali amb@kvn.com
Benjamin Hershkowitz bhershkowitz@goodwinprocter.com
4  Bobby T. Shih bshih@mount.com
Bradford P. Lyerla blyerla@marshallip.com
5  Daniel Reisner dreisner@kayescholer.com
Daniel E. Jackson djackson@kvn.com
6  Daralyn J. Durie ddurie@kvn.com
David Benyacar dbenyacar@kayescholer.com
7  David A. York david.york@lw.com
David J. Silbert djs@kvn.com
8  David P. Pearson dpearson@winthrop.com
Emmett J. McMahon ejmcmahon@rkmc.com
9  Harold J. McElhinny HmcElhinny@mofo.com
J. Timothy Nardell EfilingJTN@cpdb.com
10  James Michael Slominski jslominski@hh.com
Jan J. Klohonatz jklohonatz@tcolaw.com
11  Jason A. Crotty jcrotty@mofo.com
Jeffrey D. Sullivan jeffrey.sullivan@bakerbotts.com
12  Jeffrey H. Dean jdean@marshallip.com
Jeremy Michael Duggan jduggan@beckross.com
13  Jon-Thomas Bloch jbloch@marshallip.com
Jonathan E. Singer singer@fr.com
14  Juanita R. Brooks brooks@fr.com
Kevin D. Hogg khogg@marshallip.com
15  Kevin G. McBride kgmcbride@jonesday.com
Kevin I. Shenkman shenkmank@hbdlawyers.com
16  Maria K. Nelson mknelson@jonesday.com
Marsha Ellen Mullin memullin@jonesday.com
17  Matthew I. Kreeger mkreeger@mofo.com
Michael J. McNamara michael.mcnamara@bakerbotts.com
18  Mitchell D. Lukin mitch.lukin@bakerbotts.com
Morgan William Tovey mtovey@reedsmith.com
19  Patrick J. Whalen pwhalen@spencerfane.com
Paul A. Friedman pafriedman@mofo.com
20  Rachel Krevans rkrevans@mofo.com
Richard R. Patch rrp@cpdb.com
21  Roderick G. Dorman dormanr@hbdlawyers.com
Sean David Garrison sgarrison@lrlaw.com
22  Stephen E. Taylor staylor@tcolaw.com
Stephen P. Safranski spsafranski@rkmc.com
23  Todd Glen Miller miller@fr.com
Todd R. Tucker ttucker@rennerotto.com
24  Victor de Gyarfas vdegyarfas@foley.com
Victor George Savikas vgsavikas@jonesday.com
25  William J. Robinson wrobinson@foley.com
William R. Overend woverend@reedsmith.com
26  William R. Woodford woodford@fr.com
**Dated: December 14, 2006**                    **Richard W. Wieking, Clerk**
27                                              **By:  /s/ JW Chambers**
                                                  **Elizabeth Garcia**
28                                              **Courtroom Deputy**