IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

NO. C 05-01114

In re: Acacia Media Technologies Corp.      **SIXTH CLAIM CONSTRUCTION ORDER**

## **I. INTRODUCTION**

The Court has issued a series of Orders construing the words and phrases of the patents-in-suit. In an Order dated October 19, 2007,[1] the Court requested further briefing with respect to the construction of the phrases "transmission system" and "receiving system" in Claims 19, 41 and their dependent claims[2] in the '992 Patent. Based on the papers submitted to date, the Court issues this Sixth Claim Construction Order.

---

[1] (See Order Re: Motions for Reconsideration of Claim Construction; Fifth Claim Construction Order, Docket Item No. 259.)

[2] In the remainder of this Order, unless otherwise stated, the Court will refer to the independent and dependent claims being construed (Independent Claim 19 and Dependent Claims 20, 21, 22; and Independent Claim 41 and Dependent Claims 42, 43, 44, 45, and 46) collectively as, "the subject claims," or as, "Claims 19 and 41."

## II. DISCUSSION

Claim 19 of the '992 Patent provides:[3]

A distribution method responsive to requests from a user identifying items in **a transmission system containing information** to be sent **from the transmission system** to **receiving systems** at remote locations, the method comprising the steps of:

> storing, **in the transmission system**, information from items in a compressed data form, the information including an identification code and being placed into ordered data blocks;
>
> sending a request, by the user **to the transmission system**, for at least a part of the stored information to be transmitted to one of the receiving systems at one of the remote location selected by the user;
>
> sending at least a portion of the stored information **from the transmission system** to the receiving system at the selected remote location;
>
> receiving the sent information by the **receiving system** at the selected remote location;
>
> storing a complete copy of the received information in the **receiving system** at the selected remote location; and
>
> playing back the stored copy of the information **using the receiving system** at the selected remote location at a time requested by the user.

Claim 41 of the '992 Patent provides:

A method of transmitting information to remote locations, the transmission method comprising the steps, **performed by a transmission system**, of:

> storing items having information in a source material library;
>
> retrieving the information in the items from the source material library;
>
> assigning a unique identification code to the retrieved information;
>
> placing the retrieved information into a predetermined format as formatted data;
>
> placing the formatted data into a sequence of addressable data blocks;
>
> compressing the formatted and sequenced data blocks;
>
> storing, as a file, the compressed, formatted, and sequenced data blocks with the assigned unique identification code; and
>
> sending at least a portion of the file to one of the remote locations.

---

[3] Unless otherwise indicated, all bold typeface is added by the Court to emphasize the terms and phrases under consideration.

2

The Preambles and Steps of Claims 19 and 41 require that a step of the process be performed on, with or by[4] a "transmission system" and a "receiving system." Thus, performance on, with or by a "transmission system" and a "receiving system" must be construed because "it breathes life and meaning into the claims," and therefore. forms a limitation in the subject claims. Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc., 381 F.3d 1111, 1118 (Fed. Cir. 2004.) .

The inclusion in a patent of a process that may be performed by a person, but that also is capable of being performed by a machine, is patentable. See Alco Standard Corp. v. Tennessee Valley Authority, 808 F.2d 1490, 1497 (Fed. Cir. 1986). Accordingly, the Court proceeds to construe the phrases with an understanding that a process may be patented with or without claiming use of a device to perform the process.

**A.     "Transmission System" and "Receiving System" have Specialized Meanings**

The claims of the '992 Patent recite as an invention a device called a "transmission system" and a device called a "receiving system." The issue of whether these phrases should be given their ordinary and customary meanings or specialized meanings had been previously addressed by the Court. To be complete, the Court reexamines the issue here.

The standard used by the Court in construing the language of a patent claim is how the language would be understood by a person of ordinary skill in the art reading the patent documents at the time of the invention. See Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005). The Court presumes that an ordinarily skilled artisan would understand the words and phrases in a patent claim with their ordinary and customary meanings, unless the inventors demonstrate a clear intent to deviate from the ordinary and customary meanings. Id. In claim construction, the Court presumes that the inventors use the same words and phrases with the same meaning, unless the inventors

---

[4] A process in which a device is "used" to perform a function is different from a process "performed by" a device. In Claims 19 and 41, the "transmission system" is both "used" to perform the process and, itself "performs" some of the steps. Claim 19 recites as a step: "sending a request, by the user to the transmission system. . ." Inherently, in this step, the user is employing or "using" the transmission system as a device to receive the user's request. It is clear from the language of Claims 19 and 41 that the "transmission system" also performs steps to fulfill the purpose of the process.

demonstrate a clear intent to give them different meanings in different contexts. Southwall Techs. v. Cardinal IG Co., 54 F.3d 1570, 1579 (Fed Cir. 1995).

In the field covering transfer of electronic data, the ordinary and customary meaning attributed to the word "transmission" is the transfer of a signal from one location to another. See INSTITUTE OF ELECTRICAL AND ELECTRONICS ENGINEERING (IEEE) DICTIONARY OF STANDARDS TERMS, 1207 (7th ed. 2000). The ordinary and customary meaning attributed to "receiving" electronic data is receiving data sent from some other location. Id. at 934. The ordinary and customary meaning attributed to the word "system" is a set or an arrangement of things so related or connected as to form a unity or organic whole. See WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY, 1853 (2d ed. 1983). Thus, the ordinary and customary meaning of the phrase "transmission system" is a set or an arrangement of components that operate together to transfer data from one location to another. A similar ordinary and customary meaning exists for "receiving system."

Claims 19 and 41 recite as inventions methods for processing and distributing information performed on, with or by a "transmission system" and a "receiving system." In the device claims, as limitations, the inventors recite that the systems are comprised of configurable and interconnected components, which respond to users.[5] In the course of construing the meaning of words and phrases used in the device claims, the Court came to a determination that the phrases "transmission system" and "receiving system" are phrases coined by the inventors to mean the interconnected, configurable, user-responsive, assemblage of components which the inventors called their

---

[5] Every part of the specification clearly states an intent by the inventors that the "transmission system" and the "receiving system" process, store, send and receive the information specifically in response to "users." In both the "Summary of the Invention" and the "Description," the inventors clearly state that "transmission system" and "receiving system" mean specialized systems in which information is processed, stored and transmitted, and received in special ways so that it is responsive to requests made to the systems by individual users.

"invention." By using the word "comprising" with respect to the components, the Court has construed essential components of each device claim.[6]

Thus, the issue becomes whether the phrases "transmission system" and "receiving system" as used in the subject claims should be construed to mean the same interconnected, configurable, user-responsive assemblage of components disclosed in the specification, or whether, because a claim that does not disclose steps which use or must be performed by a particular component, the "systems" in the subject claims should be defined as composed of only those components which are essential to perform the steps in each process. The Court proceeds to examine these considerations.

**B.** **"Transmission System" and "Receiving System" as Assemblage of Components**

In making a determination of what the inventors meant by "transmission system" and "receiving system," in the subject claims, the Court has been asked to give particular consideration to the fact that elsewhere in the specification, when referring to "transmission system of the present invention" or "receiving system of the present invention," the inventors refer to a specific assemblage of components:

> FIGS. 1a-1g are high level block diagrams showing different configurations of the transmission and receiving system of the present invention.

('992 Patent, Col. 3:50-60.) Likewise, throughout the written description and drawings, the inventors describe the assemblage of components labeled "transmission system 100" as the "transmission system," and they refer to the assemblage of components labeled "receiving system 200" as the "receiving system."

The Court exercises great care before construing claim language so as to limit claim scope to a device disclosed in the written description. While claims "must be read in view of the

---

[6] In construing the claims which recite a system "comprising" enumerated components, the Court construes the claim as open ended, i.e., it permits additional components which are not required by the claim. Power Mosfet Tech., L.L.C v. Siements AG, 378 F.3d 1396, 1409 ( Fed. Cir. 2004). Thus, the fact that the inventors claim a "transmission system" or a "receiving system," comprising less than all of the components of the "transmission system" or "receiving system" as defined in the specification is not evidence that the inventors are using the phrases to refer to different systems. The device claim is construed to mean that the disclosed components are essential.

5

specification, of which they are a part[,] . . . it is improper to read a limitation from the specification into the claims." Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 904 (Fed. Cir. 2004). "Accordingly, particular embodiments appearing in the written description will not be used to limit claim language . . . unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" Innova/Pure Water, 381 F.3d at 1117 (citations omitted). Thus, the fact that specific assemblage of components are called the "transmission system" and the "receiving system" in the specification is not dispositive of whether the inventors meant to limit the claim language to those assemblages.[7]

### 1. A person of skill in the art would understand from explicit statements in the specification that the inventors define "transmission system" and "receiving system" as the configurable assemblage of components labeled "100" and "200."

The purpose of the specification is to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so. Thus, the Court's focus is on determining how a person of ordinary skill in the art would understand the relationship between a device called by a particular name in claim language and the device called by that same name in the written description and drawings.

A person of skill would understand that, in some instances, the inventors are explicitly setting out a specific example of the invention to teach how to make and use the invention, and that, in other instances, the inventors "instead intend[] for the claims and the embodiments in the specification to be strictly coextensive." See Phillips, 415 F.3d at 1323-1324. In this case,

---

[7] Although the inventors refer to the systems described in Figures 2a, 2b and 6, and the associated written description as "preferred embodiments," there are no other embodiments described in the specification. The Court draws a distinction between an alternative embodiment and alternative processing paths within an embodiment. In other words, both the "transmission system" and the "receiving system" allow alternative processing paths within the disclosed embodiment. For example, the "transmission system" is disclosed as composed of a processing pathway which is different for processing audio information than the pathway for processing video information. Similarly, the interconnections between the components allow information to by-pass some components if the information meets certain system parameters. However, all of these alternative processing pathways are present in the single embodiment of the "transmission system" and "receiving system;" they do not constitute an alternative embodiment of a "transmission system" or a "receiving system." Rather, these intrinsic alternative pathways are pathways in a single embodiment.

6

throughout the specification, the inventors repeatedly refer to what they label and describe as "transmission system 100" and "receiving system 200" as "the present invention." For example, in one instance the specification discloses as follows:

> FIGS. 1a-1g are high level block diagrams showing different configurations of the transmission and receiving system of the present invention.

('992 Patent, Col. 50-52.) Based on the language in the specification, the Court finds that a person of ordinary skill in the art would understand that the inventors intended the phrases "transmission system" and "receiving system" as used in the subject claims to mean the specific assemblage of components which they describe in the specification.

Before adopting a final construction, the Court considers the effect of language by the inventors that components are "preferably included."

### 2. The use of the word "preferably included" does not change the Court's conclusion that by the phrases "transmission system" and "receiving system," the inventors mean a specific assemblage of components.

Inherent in any patentable "system" is the existence of components which operate together for a claimed purpose. The components of "transmission system 100" are shown in a block diagram labeled "FIG. 2a" and "FIG. 2b"[8] and the components of "receiving system 200" are shown in a block diagram labeled "FIG. 6." ('992 Patent, Col. 17:67-18:1.)

On the block diagrams and in the written description, the components are described with varying levels of detail. Some of the names of the components are coined by the inventors, others are given functional names. In the specification, the inventors refer to some components as "preferably" included. The following statements in the written description are references to components which are "preferably" included:

> As shown in FIG. 2a, the source material library means included in transmission system 100 **preferably includes a source material library 111**.
> \* \* \*
> The transmission system 100 of the present invention also **preferably includes conversion means 113** for placing the items from source material library 111 into a predetermined format as formatted data.
> \* \* \*

---

[8] FIGS. 1a, 1b, 1d, 1e, 1f, and 1g each show transmission system 100, described in more detail below with respect to FIGS. 2a and 2b. ('992 Patent, Col. 3:52-54.)

7

The transmission system 100 of the present invention also **preferably includes ordering means** for placing the formatted information into a sequence of addressable data blocks.

\* \* \*

The transmission system 100 of the present invention also **preferably includes data compression means** for compressing the formatted and sequenced data.

\* \* \*

The transmission system 100 of the present invention may also **preferably include library access/interface means** for receiving transmission requests to transmit items and for retrieving formatted data blocks stored in the compressed data library 118 corresponding to the requests from users.

\* \* \*

The transmission system 100 of the present invention **preferably further includes transmitter means 122**, coupled to the compressed data library 118, for sending at least a portion of a specific file to at least one remote location.

\* \* \*

FIG. 6 illustrates a block diagram of a **preferred implementation** of the **reception system 200** according to the present invention. The reception system 200 is responsive to user requests for information stored in source material library 111. **The reception system 200 includes transceiver 201** which receives the audio and/or video information transmitted by transmitter 122 of the transmission system 100. The transceiver 201 automatically receives the information from the transmitter 122 as compressed formatted data blocks.

**The transceiver 201 is preferably connected to receiver format converter 202.** The receiver format converter 202 converts the compressed formatted data blocks into a format suitable for playback by the user in real time.

Other components are essential in that the inventors state that the components "must be" included. For example, with respect to "compressed data storage means 118" the inventors state in the specification:

> Prior to being made accessible to a user of the transmission and receiving system of the present invention, the item **must be stored in a least one compressed data library 118**, and given a unique identification code by identification encoder 112.

('992 Patent, Col. 6:35-39.) However, elsewhere in the specification the inventors state that "compressed data library 118" is "preferably" included in the system:

> After the data is processed into a file by the compressed data storage means 117, it is preferably stored in a compressed data library 118.

('992 Patent, Col. 10:36-39.) Thus, a person of ordinary skill in the art reading the patent documents would understand that the phrase "preferably stored in a compressed data library 118" is used to refer to a component which is actually essential.

8

It is clear that essential components and optional components can be determined from the specification. For example, a person of ordinary skill in the art would understand from the written description and Figure 2a that "identification encoding process 112" is an essential component of "transmission system 100." The inventors specify that the functions of the identification encoding process "must be" performed by "identification encoder 112." Further, in the block diagram of the system, the inventors show no alternative path for the information to follow within "transmission system 100," except through "identification encoding process 112."

> Prior to being made accessible to a user of the transmission and receiving system of the present invention, the item **must be** stored in at least one compressed data library 118, and **given a unique identification code by identification encoder 112.** Storage encoding, performed by identification encoder 112, aside form giving the item a unique identification code, optionally involves logging details about the item, called program notes, and assigning the item a popularity code. Storage encoding may be performed just prior to conversion of the item for transmission to reception system 200, at any time after starting the conversion process, or after storing the item in the compressed data library 118.

('992 Patent, Col. 6:35-46.)

However, there are three interconnecting lines from "identification encoding process 112" to the other components in the system. One of these lines skips a series of components and connects to "compressed data formatting section 117 prime." Thus, the skipped components are made "nonessential" if the claim does not require their processes.[9]

Two lines from component 112 lead to "converter 113."[10] Within "converter 113" one of the lines is connected to "analog input receiver 127." The other line is connected to "digital input receiver 124." These lines are intended by the inventors to define the interconnection as being with one of two alternative receivers or with both. To clarify that the lines mean the components are

---

[9] With respect to "transmission system 100," a person of skill in the art would understand from the patent documents that the five components labeled "transceiver 122" shown on Figure 2b are optional components. Similarly, the components labeled "output format conversion 206" in the block diagram for "receiving system 200" are optional components. However, having at least one of these components is essential.

[10] On Figure 2a, the component labeled "113" is not given a name. However, in the written description it is called "converter 113." ('992 Patent, Col. 6:65.)

9

optional, the inventors expressly state in the written description that one of the receivers could be left out of the transmission system altogether if the information being processed is **digital only**:

> The transmission system 100 of the present invention also preferably includes conversion means 113 for placing the items from source material library 111 into a predetermined format as formatted data. In the preferred embodiment, after identification encoding is performed by identification encoder 112, the retrieved information is placed into a predetermined format as formatted data by the converter 113. The items stored in source material library 111 and encoded by identification encoder 112 may be in either analog or digital form. Converter 113 therefore includes **analog input receiver 127** and **digital input receiver 124. If items have only one format, only one type of input receiver 124 or 127 is necessary.**

('992 Patent, Col. 6:55-68.) Inherently, if "converter 113" is essential under these circumstances, an input receiver of at least one type is essential.

However, the issue here is not whether "transmission system" or "receiving system" contain essential components or whether the interconnecting lines between components would allow a sub-system to be disclosed as an independently operable system. The issue is what a person of ordinary skill in the art would understand the inventors to mean by the phrases "transmission system" and "receiving system." In other words, although the systems have capabilities which would allow a sub-system to be disclosed as an independently operable device, the issue is whether by using the phrases "transmission system" and "receiving system" in the subject claims, the inventors disclose using the systems or disclose using sub-systems.

### 3. Although an independently functional sub-system of the "transmission system" and "receiving system" potentially could be disclosed as a device which could be used to perform a process, in the subject claims the inventors did not disclose a sub-system.

Having found that the inventors used "transmission system" and "receiving system" to mean a specialized, configurable, assemblage of components, the Court returns to the issue under consideration: Whether a person of skill in the art reading the patent documents would understand that the phrases "transmission system" or "receiving system," as used in the subject claims, mean a sub-system or whether the phrases mean the configurable assemblage of components so named in the specification. Here, the inventors disclose a configurable assemblage of components which functions under a variety of circumstances. While the disclosed interconnections would allow functional sub-systems to be disclosed, the inventors chose to disclose that the processes were

10

performed on, with or by the "transmission system" and the "receiving system," and not on, with or by a sub-system of either of those systems. Nothing in the claims, including the specification, indicate that the inventors intended to impart to the phrases "transmission system" or "receiving system" any different definition from the definition used elsewhere in the patent documents. Accordingly, the Court finds clear intent on the part of the inventors that the phrases "transmission system" and "receiving system" mean the configurable, interconnected assemblage of components labeled "100" and "200."

In sum, although the steps in a particular method claim might not use all of the capabilities or components of the "systems," the subject claims disclose that the process is performed by, on or with the "transmission system" or "receiving system." Since no other definition of those systems is given, for purposes of claim construction, the Court construes the claims to require those systems as defined by the inventors.

### C. Construction of "Transmission System" and "Receiving System"

In light of the above analysis, the Court construes the phrases as follows:

As used in Independent Claims 19 and 41 and their respective Dependent Claims of the '992 Patent, **"transmission system"** means: **the configurable, interconnected, assemblage of components labeled and described in the specification as "transmission system 100," a detailed block diagram of which is shown on Figures 2a and 2b.**

As used in Independent Claims 19 and 41 and their respective Dependent Claims of the '992 Patent, **"receiving system"** means: **the configurable, interconnected, assemblage of components labeled and described in the specification as "receiving system 200," a detailed block diagram of which is shown on Figure 6.**

### III. CONCLUSION

The Court considers that it has now construed all Claims submitted to the Court. The Court leaves for later, any consideration of whether an allegedly infringing system, which contains some but not all of the components of "transmission system 100" or "receiving system 200," nevertheless infringes the subject claims.

11

The parties shall appear for a Case Management Conference on **March 7, 2008 at 10 A.M.** The parties shall meet and confer and file a Joint Case Management Statement on or before **February 29, 2008.** The statement shall include a discovery plan and a proposed schedule for dispositive motions.

Dated: February 13, 2008

*James Ware*
JAMES WARE
United States District Judge

**United States District Court**
For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alan P. Block blocka@hbdlawyers.com; Alfredo A. Bismonte abismonte@beckross.com
Annamarie A. Daley aadaley@rkmc.com; Asim M. Bhansali amb@kvn.com
Benjamin Hershkowitz bhershkowitz@goodwinprocter.com; Bobby T. Shih bshih@mount.com
Bradford P. Lyerla blyerla@marshallip.com; Daniel Reisner dreisner@kayescholer.com
Daniel E. Jackson djackson@kvn.com; Daralyn J. Durie ddurie@kvn.com
David Benyacar dbenyacar@kayescholer.com; David A. York david.york@lw.com
David J. Silbert djs@kvn.com; David P. Pearson dpearson@winthrop.com
Emmett J. McMahon ejmcmahon@rkmc.com; Harold J. McElhinny HmcElhinny@mofo.com
J. Timothy Nardell EfilingJTN@cpdb.com; James Michael Slominski jslominski@hh.com
Jan J. Klohonatz jklohonatz@tcolaw.com; Jason A. Crotty jcrotty@mofo.com
Jeffrey D. Sullivan jeffrey.sullivan@bakerbotts.com; Jeffrey H. Dean jdean@marshallip.com
Jeremy Michael Duggan jduggan@beckross.com; Jon-Thomas Bloch jbloch@marshallip.com
Jonathan E. Singer singer@fr.com; Juanita R. Brooks brooks@fr.com
Kevin D. Hogg khogg@marshallip.com; Kevin G. McBride kgmcbride@jonesday.com
Kevin I. Shenkman shenkmank@hbdlawyers.com; Maria K. Nelson mknelson@jonesday.com
Marsha Ellen Mullin memullin@jonesday.com; Matthew I. Kreeger mkreeger@mofo.com
Michael J. McNamara michael.mcnamara@bakerbotts.com
Mitchell D. Lukin mitch.lukin@bakerbotts.com; Morgan William Tovey mtovey@reedsmith.com
Patrick J. Whalen pwhalen@spencerfane.com; Paul A. Friedman pafriedman@mofo.com
Rachel Krevans rkrevans@mofo.com; Richard R. Patch rrp@cpdb.com
Roderick G. Dorman dormanr@hbdlawyers.com; Sean David Garrison sgarrison@lrlaw.com
Stephen E. Taylor staylor@tcolaw.com; Stephen P. Safranski spsafranski@rkmc.com
Todd Glen Miller miller@fr.com; Todd R. Tucker ttucker@rennerotto.com
Victor de Gyarfas vdegyarfas@foley.com; Victor George Savikas vgsavikas@jonesday.com
William J. Robinson wrobinson@foley.com; William R. Overend woverend@reedsmith.com
William R. Woodford woodford@fr.com

**Dated: February 13, 2008**         **Richard W. Wieking, Clerk**

                                     **By: /s/ JW Chambers**
                                          **Elizabeth Garcia**
                                          **Courtroom Deputy**